IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE BELZONE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   25 C 9151 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| NESPRESSO USA, INC., KRISTA | ) | |
| NEIGHBOURS and JOSUHA ASHLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Jacqueline Belzone alleges that she worked for more than a decade for defendant

Nespresso USA, Inc.—the owner and operator of boutique coffee shops, and the maker of

espresso machines.   According to plaintiff, she is African American, and Nespresso—along with

two of its employees, defendants Krista Neighbours and Joshua Ashley—racially discriminated

against her when they denied her promotions and filled those roles with less experienced "White

people."   She further alleges that Nespresso's leadership ignored her complaints about how she

was being treated, and racially harassed her with derogatory comments.   And, she alleges,

Nespresso also failed to reasonably accommodate a disability that impaired her eyesight.

Ultimately, she claims, this all became too much, and she was forced to resign and to file her

complaint here.

Her complaint asserts 11 counts: a claim against Nespresso for racial discrimination

under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. (Count

I); a claim against Nespresso for racial harassment under Title VII (Count II); a claim against all

defendants for racial discrimination under 42 U.S.C. § 1981 (Count III); a claim against all

defendants for racial harassment under § 1981 (Count IV); a claim against all defendants for

retaliation under § 1981 (Count V); a claim against Nespresso for "harassment (retaliation)" under Title VII (Count VI); a claim against Nespresso for violating Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., based on disability discrimination (Count VII); a claim against Nespresso for violating Title I of the ADA based on "unequal terms, privileges, and conditions of employment" (Count VIII); a claim against Nespresso for retaliation under Title VII and the ADA (Count IX); a claim against Nespresso for constructive discharge based on race under Title VII (Count X); and a claim against Nespresso for constructive discharge based on disability under Title VII and the ADA (Count XI).

Nespresso has moved to dismiss all counts under Fed. R. Civ. P. 12(b)(6), and to dismiss defendants Neighbours and Ashley based on plaintiff's failure to timely serve them under Fed. R. Civ. P. 4(m).   Plaintiff opposes.   For the reasons below, the court grants in part and denies in part Nespresso's motion.

## BACKGROUND

Plaintiff alleges the following facts in its complaint, which are taken as true in resolving Nespresso's motion.   Alam v. Miller Brewing Co., 709 F.3d 662, 665-66 (7th Cir. 2013). Plaintiff is African American.   She began working for Nespresso in May 2013, as a Boutique Coffee Specialist.

According to plaintiff, she "performed her job duties satisfactorily."   Yet she "did not receive pay increases at the same rate as similarly situated White employees," and she was "passed over for promotions on several different occasions."   Indeed, she was denied a promotion to "Coffee Training Lead," to "Customer Facing Training Specialty," and to "Senior Manager"—all while she was "already fulfilling the duties of the 'higher roles' without the title."

Not only was she passed over, but Nespresso employees, Neighbours (a Director of Retail) and Ashley (a District Manager), "filled the roles with less qualified and less experienced . . . White people." And as for the Senior Manager role specifically, Neighbours and Ashley "conducted a 'sham' interview with [p]laintiff," even though they knew that they did not intend "to hire her for the role because the position was already filled." The "selected White candidate," moreover, had been with the company for only two years—eight fewer than plaintiff.

There were also other instances of discrimination:

- Nespresso told plaintiff that there was no Assistant Management role at the store where she worked. But "shortly after [plaintiff] was transferred to another location, a White person was hired for" that role.

- Nespresso treated plaintiff "differently than White" people when "interviewing for positions by holding her to "different standards." For example, Nespresso "leadership discussed 'a new puppy' and a 'peanut butter sandwich' with the selected candidate," while at the same time it "criticized" plaintiff for "arbitrary, non-performance related criteria."

- Nespresso "told [p]laintiff that to receive a certain promotion, she would have to be in a role for one year," while "similarly situated White employees were promoted within months of being employed."

At the same time plaintiff was being denied promotions, she was leading initiatives for Black History Month and Juneteenth. Because Nespresso evidently thought plaintiff was "good enough" to lead Nespresso's "diversity efforts"—just not Nespresso's work "standards"— plaintiff "engaged in legally protected activity when she complained that" Nespresso was using "her 'for diversity efforts' but den[ying] her multiple promotions because of her race." In response, Nespresso "ignored [her] and failed to communicate with her," which hampered her "ability to perform essential job tasks." Nespresso also approved plaintiff to participate in a global marketing campaign, but after she returned home from traveling for the campaign, Nespresso told her that she would need to use personal paid time off for the trip and would not

3

be compensated with a stipend and money for the travel time. Yet "all of the other employees (non-Black)" received travel stipends and hourly compensation. Nespresso thus "implemented [its] 'paid time-off' policy differently with [her], as compared with similarly situated White employees who had not engaged in legally protected activity."

There were also instances of racial harassment. Nespresso leadership made several comments about plaintiff, which reflected "negative stereotype[s] associated with Black people":

- "You're not polished enough to be a manager here at Nespresso."
- "I don't like her hair. Her hair is too messy."
- "You don't always have to be the loudest voice in the room."
- "I'm scared of you."

Finally, plaintiff "was denied a reasonable accommodation after dealing with an issue with a disability that arose about five . . . years ago"—a disability which "severely impaired her eyesight," and which Nespresso knew about. After plaintiff's paid time off was exhausted, Nespresso "forced her to take a leave of absence," and "refused to engage in the interactive process and provide a reasonable accommodation for" her. Nespresso's "actions exacerbated [her] health." And so, "[a]fter being denied multiple promotions, and a reasonable accommodation, [p]laintiff resigned on November 8, 2023."

In June 2024, plaintiff filed a discrimination charge with the EEOC. Less than a year later, she received a right to sue letter. On August 3, 2025, plaintiff filed her complaint in this court asserting 11 counts—all of which are asserted against Nespresso, and three of which (Counts III-V) are also asserted against Neighbours and Ashley.

Three months later, on November 4, 2025, plaintiff advised the court at a status hearing that defendants had signed waivers of process and would be answering the complaint. About a

4

month later, on December 5, 2025, plaintiff filed a waiver of the service of summons that showed that only Nespresso had waived service. At a hearing a few days later, plaintiff advised the court that she had served only Nespresso. A few weeks later, Nespresso filed its motion to dismiss.

## DISCUSSION

### Dismissal of the Individual Defendants Under Fed. R. Civ. P. 4(m)

Nespresso has moved to dismiss the individual defendants, Neighbours and Ashley, under Fed. R. Civ. P. 4(m). Nespresso argues that neither individual was "timely served within Rule 4(m)'s 90-day window, which ended on November 1, 2025, and the Complaint alleges no facts—and the docket reflects no showing—establishing good cause or warranting an extension." In response, plaintiff contends that Nespresso "should not be able to argue a dismissal for individual defendants that it does not represent." But the court need not dwell long on plaintiff's contention, for the court "may address sufficiency of service *sua sponte*." Darko v. City of Chi., Ill., No. 21-CV-6467, 2023 WL 5334600, at *3 (N.D. Ill. Aug. 18, 2023). And it will do so here.

"The Federal Rules clearly state that it is the plaintiff's responsibility to properly serve the defendants." Cross v. City of Chi., No. 99 C 3443, 2001 WL 1654763, at *2 (N.D. Ill. Dec. 20, 2001) (citing Fed. R. Civ. P. 4(c)). Under Rule 4(d)(1), "[t]he plaintiff may notify . . . a defendant that an action has been commenced and request that the defendant waive service of a

summons." But "a waiver letter does not excuse service unless it is signed and returned by the defendant." Cross, 2001 WL 1654763, at *2 (citing Fed. R. Civ. P. 4(d)).

Here, the only waiver of service that plaintiff has filed with the court states that it is on behalf of Nespresso. So plaintiff needed to formally serve Neighbours and Ashley. Under Rule 4(m):

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

"These service requirements provide notice to parties, encourage parties and their counsel to diligently pursue their cases, and trigger a district court's ability to exercise jurisdiction over a defendant." Darko, 2023 WL 5334600, at *4 (cleaned up).

Plaintiff had until November 1, 2025, to serve defendants. But she does not contend that she has ever served the individuals—let alone before November 1, 2025. So there are "two potential avenues to avoid dismissal." Cross, 2001 WL 1654763, at *3. "First, a district court must inquire whether a plaintiff has established good cause for failing to effect timely service." Id. (cleaned up). "Good cause typically means a valid reason for delay, such as the defendant's evading service." Darko, 2023 WL 5334600, at *4. If the plaintiff shows good cause, "the court has no choice but to extend the time for service, and the inquiry is ended." Cross, 2001 WL 1654763, at *3 (cleaned up). Plaintiff has not argued here that good cause exists.

She instead relies on the second avenue—the court's discretion. "If good cause is not shown, a court must still consider whether to grant a discretionary extension of time." Id. In

6

exercising its discretion, the court "should consider the relative hardships of the parties."

Darko, 2023 WL 5334600, at *5 (citation omitted). In doing so, a court may consider:

> (1) whether the expiration of a statute of limitations during the pending action would prevent refiling, (2) whether the defendant evaded service, (3) whether the defendant's ability to defend would be prejudiced by an extension, (4) whether the defendant had actual notice of the lawsuit, (5) whether the defendant was eventually served, (6) whether the plaintiff requested an extension from the court due to difficulties perfecting services, and (7) whether the plaintiff diligently pursued service during the allotted period.

Id. (cleaned up). But "even if the balance of hardships appears to favor an extension, the district court retains its discretion to hold the [plaintiff] accountable for [her] actions—or, more accurately, inaction—by dismissing the case." Id. (cleaned up).

Plaintiff argues here that the discretion factors favor giving her more time to serve. According to her, Nespresso's "in-house counsel received the waiver and complaint" on August 4, 2025—the day after the complaint was filed—and, on October 6, 2025, in-house counsel "indicated that they would waive service once waiver was served." But, she asserts, in-house counsel did not "communicate that they were not [also] accepting service on behalf of the individual defendants" until the December 9, 2025 status hearing. It was "misleading," she says, for Nespresso's counsel "to communicate that they would be waiving service without specifying that the individual Defendants were not included." Had plaintiff's counsel known about this, "she would have been diligent in serving the individual[s]." She also argues that "the statute of limitations has not run," and that defendants would not be prejudiced by extending the time to serve.

The court finds that an extension of time is not warranted here, and that dismissal is appropriate. For starters, plaintiff has not diligently pursued service. "Under Illinois law,

7

serving an individual's employer is not sufficient for service on the individual." Darko, 2023 WL 5334600, at *4. So plaintiff bore the burden to ensure that the individual defendants either waived service or were served. Her alleged reliance on Nespresso's silence is therefore no excuse. Nor has she argued that she sought any extensions before asking for more time in her response brief (which was filed on January 26, 2026). She should have at least done so at, or right after, the December 9, 2025 hearing—the date on which she suggests she first realized that Nespresso's counsel was not waiving service on behalf of the individuals. She could have again sought to do so after Nespresso raised this issue in its motion to dismiss three weeks later. The fact of the matter is that, as Nespresso points out in its reply brief, plaintiff still has not served the individuals—this even though she argues that Nespresso cannot even raise this issue. What's more, she has not argued that the individuals were evading service. And she contends that there is no statute of limitations problem here. Plaintiff has thus failed to show that the discretion factors favor granting her an extension of time.

In short, plaintiff has failed to serve the individual defendants, to show good cause for an extension, or to persuade the court to discretionarily grant an extension. The court consequently dismisses without prejudice the action against Neighbours and Ashley.

### Dismissal of All Counts Under Fed. R. Civ. P. 12(b)(6)

Nespresso has also moved to dismiss all counts in the complaint under Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8 "prescribes the information [that] a plaintiff must present about the merits of [her] claim at the outset of litigation: 'a short and plain statement of the claim showing that [she] is entitled to relief.'"

Berk v. Choy, 607 U.S. 187, 193 (2026) (quoting Fed. R. Civ. P. 8(a)(2)). So to rule on a Rule 12(b)(6) motion, the court must determine whether the plaintiff has adequately presented a statement of the claim that shows entitlement to relief.

To do so, the court "asks only whether the complaint's factual allegations, if taken as true, 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Johnson v. City of Shelby, Miss., 574 U.S. 10, 12 (2014) ("A plaintiff . . . must plead facts sufficient to show that her claim has substantive plausibility."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Johnson, 574 U.S. at 12 ("Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city."). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (cleaned up). In other words, a claim for relief "cannot be merely conceivable or speculative." Taylor v. Salvation Army Nat'l Corp., 110 F.4th 1017, 1028 (7th Cir. 2024). Rather, the "plaintiff must present a story that holds together"—with "sufficient details to make the plaintiff['s] account one that *could* have happened and, if it did happen, states a claim cognizable under the governing law." Id. (cleaned up) (emphasis in original).

In determining whether the plaintiff has presented such a story, the court must "understand" the law "on which the claims of the complaint are predicated." Id. This means that the court must review the relevant statutes to see if the plaintiff's story falls within the scope

9

of what those statutes protect and "gives adequate notice" to the defendant "of the gravamen of the plaintiff['s] grievance." Id. At the same time, the court must be mindful that "the Federal Rules of Civil Procedure do not require code pleading"—that is, "plead[ing] the elements of a cause of action along with facts supporting each element." Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana, 786 F.3d 510, 517 (7th Cir. 2015); see also Deslandes v. McDonald's USA, LLC, 81 F.4th 699, 705 (7th Cir. 2023) (a complaint need not "match facts to elements of legal theories"). Indeed, "[t]hat something must be proved (if plaintiff is to win) does not imply that it must be alleged in the complaint." Hudson v. Am. Airlines, Inc., 812 F. Supp. 3d 828, 834 (N.D. Ill. 2025) (quoting Thomas v. JBS Green Bay, Inc., 120 F.4th 1335, 1338 (7th Cir. 2024)). Or stated otherwise: "Lists of things that plaintiffs need to prove concern *evidence* (at summary judgment and trial); they must not be treated as demands for longer and more detailed pleadings." Thomas, 120 F.4th at 1338 (emphasis in original).

In the end, then, the "plausibility" "principle does not, and under the strictures of Rule 8 cannot, present a high barrier to the pleader." Taylor, 110 F.4th at 1028. In fact, the Supreme Court recently reiterated this point in Berk: "By design, this system of pleading makes it relatively easy for plaintiffs to subject defendants to discovery—even for claims that are likely to fail." 607 U.S. at 194. The Court therefore admonished lower federal courts not to attempt "[t]o protect defendants from this burden" by "tr[ying] to require more information for certain kinds of claims," as the Court has "consistently rejected such efforts." Id. The Court thus concluded: "Unless the Federal Rules single out a claim for special treatment, see, *e.g.*, [Rule] 9, Rule 8 sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claims." Id.

With these principles in mind, the court turns to each of the counts.

### Count I (Title VII Racial Discrimination)

In Count I, plaintiff alleges that Nespresso racially discriminated against her in violation of Title VII when it "passed [her] over for numerous promotions, while [it] promoted less qualified White people with less experience than" her.   She alleges that she therefore "suffered adverse employment actions," ultimately "leading to [her] constructive termination."

Section 703(a)(1) of Title VII (codified in 42 U.S.C. § 2000e-2(a)) prohibits employers from "discriminat[ing] against any individual" as to her "compensation, terms, conditions, or privileges of employment . . . because of [her] race."   42 U.S.C. § 2000e-2(a).   Nespresso argues "that to maintain a race discrimination claim under Title VII," plaintiff "must allege that: (1) she was a member of a protected class, (2) she performed her job satisfactorily, (3) she suffered an adverse employment action, and (4) others outside of her protected class were treated more favorably than she was."   (Citing <u>Fane v. Locke Reynolds, LLP</u>, 480 F. 3d 534, 538 (7th Cir. 2007)).

But that is neither true nor what <u>Fane</u> said.   The <u>Fane</u> court instead stated that a plaintiff "must show" those four elements "[t]o successfully set forth a <u>prima facie</u> case of racial discrimination."   480 F.3d at 538 (emphasis added).   But those prima facie "elements set out an evidentiary standard, not a pleading rule."   <u>Thomas</u>, 120 F.4th at 1338 (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510 (2002)).   And "a demand that a complaint allege each element that the plaintiff eventually will need to prove . . . [i]s contrary to law."   <u>Id.</u> at 1337.   Thus, "an employment discrimination plaintiff need not plead a prima facie case of discrimination."   <u>Id.</u> (citation omitted) (reversing district court for dismissing a Title VII racial discrimination claim).

11

Rather, "[t]o state a claim of employment discrimination," a plaintiff must "advance plausible allegations that [s]he experienced discrimination because of h[er] race." Freeman v. Eaton Corp., No. 23-2981, 2024 WL 4200580, at *2 (7th Cir. Sept. 16, 2024) (citing Kaminski v. Elite Staffing, Inc., 23 F.4th 774, 776 (7th Cir. 2022)). This is a "relatively low bar." Id. at *3. Indeed, "all a complaint has to say" is: "'I was turned down for a job because of my race.'" Thomas, 120 F.4th at 1337.

Plaintiff's complaint here says that and more. She alleges, for example: that she is African American; that she worked for Nespresso for a decade and "performed her job duties satisfactorily"; but that she "did not receive pay increases at the same rate as similarly situated White employees"; that she was denied a promotion to "Coffee Training Lead," to "Customer Facing Training Specialty," and to "Senior Manager"—all while she was "already fulfilling the duties of the 'higher roles' without the title"; and that Nespresso ended up "fill[ing] the roles with less qualified and less experienced, White people." She further alleges that, as for the Senior Manager role specifically, Neighbours and Ashley "conducted a 'sham' interview with" her even though they knew that "the position was already filled" by a "White candidate," who had been with the company eight fewer years than her.

Plaintiff has pleaded enough to avoid dismissal. See Freeman, 2024 WL 4200580, at *3 (vacating dismissal of Title VII racial discrimination claim based on a withheld promotion where the plaintiff alleged that "he was qualified for a promotion, that supervisors blocked his promotion by holding onto his skill blocks (once for an apparently dubious reason related to computer skills), and that other employees were permitted to advance on schedule"); cf. Swanson v. Citibank, N.A., 614 F.3d 400, 404-05 (7th Cir. 2010) (explaining that "[a] plaintiff

12

who believes that she has been passed over for a promotion because of her sex" will have "plausibly" pleaded a discrimination claim by pleading that "she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else," because that "is an entirely plausible scenario, whether or not it describes what 'really' went on").

Nespresso contends that Count I—along with many of the other counts—"centers on her theory that the allegations 'led to her constructive discharge' on the basis of race," but that she has not plausibly alleged that she was constructively discharged. As just explained, however, her racial discrimination claim centers instead on withheld promotions. While it mentions that she was constructively terminated, the claim is broader and, for the reasons discussed above, survives dismissal even without taking into account her alleged constructive discharge. As discussed further below, moreover, she pleads a standalone constructive discharge claim in Count X, which is proper, see Boyd v. Advanced Physicians, No. 22-CV-7012, 2024 WL 1363421, at *6 (N.D. Ill. Mar. 29, 2024) (citing Green v. Brennan, 578 U.S. 547, 557 (2016)), and which the court finds is also sufficiently pleaded.

Because plaintiff's racial discrimination claim meets the relatively low discrimination-pleading bar, the court denies Nespresso's motion to dismiss Count I.

### Count III (§ 1981 Racial Discrimination)

In Count III, plaintiff alleges that Nespresso racially discriminated against her in violation of § 1981. Section 1981 traces its lineage to the Civil Rights Act of 1866, and provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, [and] give evidence . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. An

13

"at-will employment relationship . . . is sufficiently contractual in nature to maintain a § 1981 action for discrimination in promotion and pay." Walker v. Abbott Lab'ys, 340 F.3d 471, 478 (7th Cir. 2003).

While § 1981 and Title VII both bar racial discrimination, they are not identical. Unlike Title VII, for example, § 1981 permits individual liability. And "to succeed on a § 1981 claim, as opposed to a claim under Title VII, a plaintiff has the burden of showing that race was a but-for cause of the injury." Singmuongthong v. Bowen, 77 F.4th 503, 507 (7th Cir. 2023) (citing Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 332 (2020)).

As the Supreme Court explained in Comcast: "Title VII was enacted in 1964; this Court recognized its motivating factor test in 1989; and Congress replaced that rule with its own version two years later." 589 U.S. at 337. Under Title VII, then, a "plaintiff who shows that discrimination was even a motivating factor in the defendant's challenged employment decision is entitled to declaratory and injunctive relief." Id. "Meanwhile, § 1981 dates back to 1866 and has never said a word about motivating factors." Id. at 337-38. To the contrary, "but-for cause" is an "essential element" of a § 1981 claim. Id. at 331-32. And so, the Comcast Court held, a plaintiff asserting a § 1981 claim "must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." Id. at 341 (emphasis added); see also Miao v. United Airlines, Inc., 164 F.4th 622, 625 (7th Cir. 2026) ("To allege [a § 1981] discrimination claim, Miao must plead that, but for his race, he would not have suffered the loss of a legally protected right to make and enforce a contract."); Williams v. State Farm Mut. Auto. Ins. Co., 609 F. Supp. 3d 662, 674 (N.D. Ill. 2022) ("a Section 1981 plaintiff must plead 'but for' causation, whereas a Title VII plaintiff can plead causation in one of two ways:

14

(1) by alleging that a protected trait was a 'motivating factor' in a defendant's challenged employment practice; or (2) by the more traditional but-for causation standard").

Plaintiff has sufficiently pleaded "but for" causation here. As an initial matter, there appears to be some debate as to what the "but for" causation standard requires for a § 1981 discrimination claim. The Supreme Court explained in Bostock v. Clayton Cnty., Georgia, 590 U.S. 644, 656 (2020), that "traditional but-for" causation "is established whenever a particular outcome would not have happened 'but for' the purported cause." Or put another way, "a but-for test directs [the court] to change one thing at a time and see if the outcome changes." Id. "If it does," the court has "found a but-for cause." Id. This is a "sweeping standard," because "[o]ften, events have multiple but-for causes." Id. In other words, the traditional "but for" causation standard is less stringent than a "solely because of" or "primarily because of" standard. Id.

Yet courts in the Seventh Circuit have suggested that Bostock's discussion of "but for" causation is limited to Title VII cases. See Arora v. Nav Consulting Inc., No. 21 C 4443, 2022 WL 7426211, at *3 (N.D. Ill. Oct. 13, 2022) ("The Bostock court specifically limited its holding to a narrow question within Title VII and refused to 'prejudge' how its interpretation of 'because of' in Title VII might affect other sex discrimination statutes."); see also Williams, 609 F. Supp. 3d at 681 ("The parties' positions on Comcast and Bostock present an interesting and difficult question—whether Bostock's multiple but-for causes analysis can apply in the Section 1981 context."); but see Peaster v. McDonald's Corp., No. 22 CV 7037, 2023 WL 5387573, at *4 (N.D. Ill. Aug. 22, 2023) ("The Seventh Circuit has not decided whether Comcast's but-for causation standard permits a § 1981 plaintiff to pursue multiple theories of discrimination at the

15

pleading stage, but the Court concludes that it does."). And the Seventh Circuit has suggested—albeit in an nonprecedential order—that Comcast requires a "but for" standard for § 1981 claims that hews closer to a "primarily because of" standard, stating: "[u]nder § 1981, the race- or ethnicity-based discrimination must have been the determinative reason for" the adverse employment action. Arevalo-Carrasco v. Middleby Corp., Inc., 851 F. App'x 628, 630-31 (7th Cir. 2021) (emphasis added) (citing Comcast, 589 U.S. at 340-41).

At the end of the day, whether "determinative reason" is too strict of a standard is of no moment here: plaintiff has plausibly alleged that race was the "determinative reason" for the withheld promotions. Plaintiff alleges that Nespresso's "decision to discriminate against [her] was motivated solely by the fact that she is African-American," and that "less qualified and less experienced, White people" filled the roles she was passed over for—including for the Senior Manager role, for which Neighbours and Ashley "conducted a 'sham' interview" despite knowing that "the position was already filled" by a "White candidate," who had been with Nespresso fewer years than plaintiff. The court therefore denies Nespresso's motion to dismiss Count III under Rule 12(b)(6).

### Count II (Racial Harassment under Title VII)

Plaintiff alleges in Count II that Nespresso violated Title VII because she was harassed based on her race, which "amounted to conduct that was intimidating, hostile, and offensive and interfered with Plaintiff's work performance." "An employer may be liable for discrimination within the meaning of Title VII if an employee is subject to a hostile work environment based on h[er] race." Mason v. S. Illinois Univ. at Carbondale, 233 F.3d 1036, 1043 (7th Cir. 2000) (discussing 42 U.S.C. § 2000e–2(a)(1)).

16

Nespresso argues that "[t]o state a hostile-work-environment claim, a plaintiff must plausibly allege: (1) unwelcome harassment; (2) based on a protected characteristic; (3) that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (4) a basis for employer liability." But, Nespresso says, plaintiff has failed to do so here. She has instead pleaded "isolated incidents occurring over a long period of employment," that are "not alleged to have been frequent or relentless, physically threatening, or accompanied by epithets or race-based slurs," or that "plausibly show humiliation or interference with work performance." Nespresso thus concludes that her claim should be dismissed.

The court disagrees. The elements that Nespresso recites are once again prima facie elements, which once again "set out an evidentiary standard, not a pleading rule." Thomas, 120 F.4th at 1338. And they are the very same elements that the Thomas court faulted the district court for relying on in dismissing the plaintiff's hostile work environment claim in that case. Id. Thomas alleged there that, based on his race, his employer: "delayed for three years his training on a particular machine"; "denied his request for vacation time while granting equivalent requests by other workers"; and "transferred him to a different shift even though it knew that this caused him problems in raising a young child." Id. at 1336. He "maintain[ed] that the[se] conditions . . . add[ed] up to a hostile work environment." Id. at 1338. The district court disagreed, dismissing his complaint after "demand[ing] that Thomas's complaint narrate facts corresponding to [the] elements" that Nespresso points to here. Id.

The Seventh Circuit reversed, explaining: "That something must be proved (if plaintiff is to win) does not imply that it must be alleged in the complaint." Id. To the contrary: "All the complaint need do is state a grievance. Details and proofs come later." Id. Because Thomas's

17

complaint stated a grievance, the Seventh Circuit concluded that it "survive[d] a motion under Rule 12(b)(6)." Id.

Plaintiff's complaint here, like the one in Thomas, also states a hostile work environment grievance.   In addition to the failure-to-promote allegations discussed above, she also alleges that Nespresso's leadership said about her: "You're not polished enough to be a manager here at Nespresso"; "I don't like her hair. Her hair is too messy"; "You don't always have to be the loudest voice in the room"; and "I'm scared of you."   According to plaintiff, these are "negative stereotype[s] associated with Black people."   Taking these allegations together—and construing them in her favor, as the court must—they are sufficient to state a hostile work environment grievance, and thus to survive Nespresso's Rule 12(b)(6) motion.   The court therefore denies Nespresso's motion to dismiss Count II.

### Count IV (Racial Harassment under § 1981)

In Count IV, plaintiff alleges that Nespresso racially harassed her under § 1981.   As with racial discrimination claims, Title VII and § 1981 largely overlap for racial harassment claims (and indeed, Nespresso argues for dismissal of this claim in the same section as the Title VII claim and based on the same grounds).   But again, unlike Title VII, § 1981 permits individual liability, and requires the plaintiff to plead that race was a but-for cause of her injury.   See Comcast, 589 U.S. at 333; see also Ohaeme v. Andy Mohr Avon Nissan, No. 1:23-CV-00181-JMS-KMB, 2024 WL 4932038, at *27 (S.D. Ind. Dec. 2, 2024) ("Although the law largely overlaps between Title VII and § 1981, the law is clear that a plaintiff pursuing a § 1981 racial harassment claim bears the burden of showing that race was a but-for cause of her injury, instead of a motivating factor." (cleaned up)).

18

Plaintiff has done that here. As discussed above, the allegations suggest that racial animus was the determining factor in why she was harassed. The court accordingly denies Nespresso's motion to dismiss Count IV under Rule 12(b)(6).

**Count X (Constructive Discharge under Title VII based on Race)**

In Count X, plaintiff alleges that Nespresso constructively discharged her based on her race in violation of Title VII. To establish a claim for constructive discharge, a plaintiff must show that: "(1) she was discriminated against by her employer to the point where a reasonable person in her position would have felt compelled to resign; and (2) that she actually resigned." Boyd, 2024 WL 1363421, at *6. "Generally, to support this claim, a plaintiff's working conditions must be even more egregious than the high standard for hostile work environment claims because employees are generally expected to remain employed while seeking redress." Id. This "requires an employee to show that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable." Warren v. Millennium Hotels & Resorts, 692 F. Supp. 3d 828, 831 (N.D. Ill. 2023) (cleaned up). Yet "even where conditions alleged in a complaint may not ultimately qualify as intolerable, all that is required to plead a constructive discharge claim is, at most, the identification of the situation, allegation of unlawful motivation, and specific examples of poor treatment." Id. at 832.

Plaintiff has met that pleading burden here. Again, she alleges that she was denied multiple promotions based on her race, that Nespresso leadership made racially derogatory

19

comments about her, and that she resigned.   The court consequently denies Nespresso's motion to dismiss Count X.

### Count V (§ 1981 Retaliation) and Count VI (Title VII Retaliation)

"Title VII forbids an employer from discriminating against an employee who has 'opposed any practice' made unlawful by Title VII or who 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009) (quoting 42 U.S.C. § 2000e–3(a)) (brackets in original)).   Like Title VII, § 1981 also "encompasses retaliation claims," id., and the two statutes share the same standards, see id.   To establish a retaliation claim under either, a plaintiff generally must show that "(1) the plaintiff engaged in a statutorily protected activity; (2) the employer took a materially adverse action; and (3) there is a causal connection between the two."   Johnson v. Accenture LLP, 142 F.4th 536, 542 (7th Cir. 2025) (citation omitted).   To show a causal connection "in the retaliation context, the protected activity need not be the 'only cause of the adverse action'"; it need be only "a 'but for' cause, meaning that 'the adverse action would not have happened without the activity.'"   Id. at 543 (citation omitted).

Nespresso argues that Counts V and VI should be dismissed because plaintiff "fails to identify the dates, recipients, substance of the complaints, any follow-up for the alleged protected activity, or any timeline, all of which make it impossible for Plaintiff to state a claim for retaliation, let alone a claim for the 'but for' causation that is required to prove retaliation under Section 1981."   The court disagrees.   To state a retaliation claim, a plaintiff need allege only that she "engaged in statutorily protected activity and was subjected to an adverse employment action as a result."   Carlson v. CSX Transp., Inc., 758 F.3d 819, 828 (7th Cir. 2014) (cleaned

20

up).   "She is not required to plead a causal link between the protected activity and the adverse action."   Warren, 692 F. Supp. 3d at 832.

Here, plaintiff alleges that she "engaged in legally protected activity when she complained that" Nespresso was using "her 'for diversity efforts' but den[ying] her multiple promotions because of her race."   This counts as protected activity.   See Warren, 692 F. Supp. 3d at 832 ("an internal complaint to an employer qualifies as statutorily protected activity so long as it indicates the discrimination occurred because of some protected class" (citation omitted)).   And in response to her complaint, she alleges, Nespresso "ignored [her] and failed to communicate with her," which hampered her "ability to perform essential job tasks."   She further alleges that Nespresso "implemented [its] 'paid time-off' policy differently with [her], as compared with similarly situated White employees who had not engaged in legally protected activity."   These responses plausibly suggest "adverse employment action."   See Warren, 692 F. Supp. 3d at 832-33 ("In the retaliation context, 'adverse employment action' simply means an employer's action that would dissuade a reasonable worker from participating in protected activity." (cleaned up)).

While sparse, plaintiff's allegations are sufficient at this stage to state a retaliation "grievance" against Nespresso.   Thomas, 120 F.4th at 1338-39; see Williams v. Carle Found., No. 1:24-CV-01421-JEH-RLH, 2025 WL 1461300, at *3 (C.D. Ill. May 21, 2025) (citing Thomas and finding that plaintiff stated a retaliation grievance where she alleged that she "engaged in . . . protected activity of complaining about 'racially charged remarks to her manager,'" and thereafter "she found herself increasingly isolated" and "ostracized by colleagues" and was constructively discharged); see also Anderson v. Steiner, No. 23 CV 15584,

21

2026 WL 579209, at *2 (N.D. Ill. Mar. 2, 2026) (finding the plaintiff's allegations "that her position was eliminated and she was moved to a new position 'based on' her 'Race/Color (Black), Retaliation (For engaging in prior protected EEO activity), Sex (Female), Disability (PTSD, Anxiety, Panic Attacks, Depression)'" was "sufficient to plead race, color, sex, and disability discrimination and retaliation"). The court thus denies Nespresso's motion to dismiss Counts V and VI.

### Counts VII and VIII (ADA Violations)

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). It defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities," as "a record of such an impairment," or as "being regarded as having such an impairment." 42 U.S.C. § 12102(1). It "then defines 'discriminate against a qualified individual on the basis of disability' to include disparate treatment *and* failure to accommodate: 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .'" Scheidler v. Indiana, 914 F.3d 535, 541 (7th Cir. 2019) (emphasis in original) (quoting 42 U.S.C. § 12112(b)(5)(A)). The ADA thus "recognizes the existence of separate claims": "disparate treatment" claims; and "failure to accommodate" claims. Id.

Plaintiff asserts both types here. In Count VII, she asserts that Nespresso violated the ADA by failing to provide her with a reasonable accommodation. A failure to accommodate

22

claim "requires proof" that: "(1) plaintiff was a qualified individual with a disability; (2) defendant was aware of his disability; and (3) defendant failed to accommodate h[er] disability reasonably." Id.

In Count VIII, she alleges Nespresso violated the ADA by treating her disparately—by "subject[ing] [her] to unequal terms, privileges, and conditions of employment based on her disability." A disparate treatment claim "requires proof" that: "(1) plaintiff was disabled; (2) plaintiff was qualified to perform essential functions with or without reasonable accommodation; and (3) disability was the 'but for' cause of adverse employment action." Scheidler, 914 F.3d at 541. As for "but for" cause, a plaintiff's disability need not be the sole reason for the challenged action; it need only "be *a* reason for the challenged action." Lewis v. Indiana Dep't of Transportation, 173 F.4th 876, (7th Cir. 2026) (emphasis in original) (cleaned up).

Nespresso argues that plaintiff has failed to sufficiently plead either claim. According to Nespresso, plaintiff has insufficiently pleaded the first factor—that she is disabled within the meaning of the ADA. That is because, it asserts, "she does not identify what the condition is, or allege facts about the duration, severity, or the effect of any mitigating measures during the relevant period." It next argues that plaintiff admits in her complaint that she "performed her job duties satisfactorily during her time with" Nespresso, and therefore did not need a "reasonable accommodation." And, Nespresso contends, her allegation that she was forced to take leave after exhausting PTO does not plausibly plead a denial of accommodation because leave can be a reasonable accommodation, and she does not allege that Nespresso denied her leave. Finally, Nespresso asserts that she fails to allege that there was a "breakdown in the

23

interactive process attributable to Nespresso." These ADA claims, Nespresso concludes, should accordingly be dismissed.

The court disagrees. Nespresso once again leans heavily on the prima facie factors and what plaintiff will ultimately need to prove. But to state a claim under Title I of the ADA, plaintiff need only plead facts suggesting that she is a qualified individual who, "on the basis of disability," was treated differently as to the "terms, conditions, and privileges of employment" (disparate treatment), 42 U.S.C. § 12112(a), or was denied a reasonable accommodation (reasonable accommodation), id. § 12112(b)(5)(A); cf. Brown v. Meisner, 81 F.4th 706, 708-09 (7th Cir. 2023) (explaining that "[t]o state a claim under Title II of the ADA, Brown needed only to plead facts suggesting that he is a 'qualified individual with a disability' who 'by reason of such disability' was 'denied the benefits of the services, programs, or activities of a public entity,'" and that "[a]n allegation that the defendants failed to make reasonable accommodations can state a violation of Title II of the ADA" (quoting 42 U.S.C. § 12132)).

She has met that pleading burden here. She alleges, for example, that she "performed her job duties satisfactorily" while working for Nespresso, which is supported by her allegation that she worked there for 10 years (qualified individual); that her "eyesight" is "severely impaired" (disability); and that she "requested accommodations" for her disability but Nespresso "denied [her] a reasonable accommodation," "forced her to take a leave of absence" without "engag[ing] in [an] interactive process," and "failed to pay [her], despite her having a certification from the doctor regarding her disability," and despite Nespresso having "knowledge of the disability" (disparate treatment and accommodation denial). Although she does not specifically identify the name or diagnosis of her condition, as Nespresso notes, she has at least

24

identified the body part (her eyes) and the life activity that was impaired (seeing). Harris v. Martinez, No. 22-CV-00373, 2023 WL 3504930, at *4 (N.D. Ill. May 17, 2023) (rejecting the defendant's argument that to state an ADA claim the "[p]laintiff must call out a specific condition in her complaint—for example, bunions").

To be sure, plaintiff's allegations are quite thin, and it remains to be seen whether she will be able to "marshal enough evidence to" meet her evidentiary burdens and "get to trial." Thomas, 120 F.4th at 1338. But "[d]etails and proofs come later." Id. Because plaintiff's complaint states an ADA grievance, the court denies Nespresso's motion to dismiss Counts VII and VIII.

### Count IX (Retaliation under the ADA and Title VII)

The ADA "prohibits retaliating against individuals (qualified or not) who have engaged in activities protected by the ADA, such as filing a Charge of Discrimination with the EEOC or requesting reasonable accommodations." Rowlands v. United Parcel Serv.- Fort Wayne, 901 F.3d 792, 798 (7th Cir. 2018). Nespresso argues that Count IX "appears to premise protected activity on seeking leave or an accommodation related to her ocular condition, which she asserts led to her constructive discharge," but that she "does not plead when or to whom any protected complaint was made or any causal nexus beyond conclusory assertions." The court finds that plaintiff has pleaded enough at this stage. As discussed above, plaintiff alleges that she requested accommodations for her severely impaired eyesight. She further alleges in Count IX that "in response," she was forced to take leave and was constructively discharged. That is sufficient to avoid dismissal of the ADA-portion of her retaliation claim.

But her attempt to use the same alleged conduct to assert a retaliation claim under Title VII fails. Title VII covers unlawful employment practices and retaliation based on an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Disability does not fall under any of these categories but instead is protected by its own separate statute, the ADA, under which [plaintiff] also seeks recovery." Tarpley v. City Colleges of Chicago, 87 F. Supp. 3d 908, 913 (N.D. Ill. 2015). Plaintiff thus "cannot proceed on a retaliation claim based on this ADA-protected activity." Id. The court therefore dismisses Count IX to the extent that it is based on Title VII.

### Count XI (Constructive Discharge based on Disability)

Because disability does not fall within Title VII, plaintiff cannot base Count XI on Title VII. The court accordingly dismisses Count XI to the extent it is based on Title VII.

But plaintiff also alleges in Count XI that her constructive discharge violated the ADA. The Seventh Circuit has recognized that a constructive discharge claim can be based on the ADA. Kinney v. St. Mary's Health, Inc., 76 F.4th 635, 647-48 (7th Cir. 2023). As explained above, "all that is required to plead a constructive discharge claim is, at most, the identification of the situation, allegation of unlawful motivation, and specific examples of poor treatment." Warren, 692 F. Supp. 3d at 832.

Plaintiff has alleged that here. Again, she alleges that: she "requested accommodations" for her severely impaired eyesight; but Nespresso "denied [her] a reasonable accommodation," "forced her to take a leave of absence," and "failed to pay [her]" based at least in part on her

26

disability; and that she resigned. The court consequently denies Nespresso's motion to dismiss Count XI.

## CONCLUSION

For the above reasons, the court grants in part and denies in part defendant Nespresso's motion to dismiss [11]. The court grants Nespresso's motion to dismiss Counts IX and XI to the extent that they are based on Title VII. The court otherwise denies Nespresso's motion to dismiss the counts against it. The court dismisses without prejudice the action against individual defendants Neighbours and Ashley. Nespresso is directed to file its answer by August 7, 2026. Plaintiff and Nespresso are directed to file a joint status report using this court's form on or before August 21, 2026.

So ordered.

ENTER:

**Robert W. Gettleman**
**United States District Judge**

DATE:    July 13, 2026

27